

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

WK:ADW
F. #2020R00142

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 6, 2020

By ECF

The Honorable Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: United States v. Keith Levy
      Criminal Docket No. 20-87 (RPK)

Dear Judge Pollak:

  The government respectfully submits this letter in response to the defendant's letter motion, dated April 4, 2020, in which he requests modification to the terms of his release. ECF Dkt. No. 16 ("Def. Mot."). For the reasons set forth below, the motion should be denied.

I. Background

  A. The Instant Offense

  In July 2006, the defendant was convicted in a New York state court following a jury trial for attempted murder and several other violent felonies. This conviction arose out of an incident in which the defendant pulled out a gun and shot at an intended victim several times, but missed and wounded multiple innocent bystanders. The defendant was sentenced to 14 years of incarceration and 5 years of post-release parole supervision.

  Since approximately May 2019, the defendant has been under the supervision of parole officers from the New York State Department of Corrections and Community Supervision ("DOCCS"). Due to the defendant's associations with suspected gang members and criminal activity in the New York City Police Department's 73rd Precinct (which covers certain parts of the Brownsville and Ocean Hill neighborhoods of Brooklyn, New York), the defendant was prohibited from entering that precinct as a term of his parole.

In violation of this condition, the defendant entered the 73rd Precinct on more than one occasion without prior authorization by the DOCCS. On January 24, 2020, a senior parole officer ("SPO") met with the defendant and required him to wear a GPS location monitoring device on his ankle as a new condition of supervision.

Less than 12 hours later, on January 25, 2020, the defendant cut the GPS monitoring device off of his ankle and threw it down an incinerator in a residential building in Brooklyn. On January 27, 2020, the defendant failed to report to his parole officer as directed. That evening, after a parole officer unsuccessfully attempted to locate the defendant in Brooklyn, the officer called the defendant, who by this point was in Atlanta, Georgia. At the time of the call, several other parole officers, including the SPO who had required the defendant to wear the GPS monitoring device, were able to listen in on the conversation. During the call, the defendant refused the officer's request that he voluntarily report to the DOCCS office. The defendant also said, in sum and substance, that he wanted to get "his hammer" (a slang term for a gun) and shoot the SPO in the face.

During the defendant's initial appearance on February 12, 2020, United States Magistrate Judge Lois Bloom entered an order of detention and remanded the defendant to the Metropolitan Detention Center ("MDC") in Brooklyn. See ECF Dkt. No. 4. The defendant was indicted by a grand jury sitting in the Eastern District of New York on February 21, 2020 and charged with a single count of transmitting an interstate threat to kill or injure the SPO, in violation of 18 U.S.C. § 875(c). See ECF Dkt. No. 7.

B. The Defendant's Criminal History

On December 9, 2005, the defendant was arraigned on an indictment in a New York state court for attempted murder, first degree attempted assault, second degree criminal possession of a weapon and first degree reckless endangerment. On July 26, 2006, following a jury trial, the defendant was convicted on all counts. As referenced above, he was sentenced to 14 years of incarceration and 5 years of post-release parole supervision on the attempted murder conviction, as well as several lesser concurrent sentences on the other counts.

On December 17, 2012, the defendant was arrested for having a shank while in prison. On April 11, 2014, the defendant was arraigned on an indictment for third degree criminal possession of a weapon and first degree knowingly making or possessing dangerous contraband in prison. The defendant pleaded guilty to first degree attempted knowingly making or possessing dangerous contraband in prison and was sentenced to 18 months to 3 years of incarceration.

C. Conditions of the Defendant's Release on Bond

On March 17, 2020, the defendant filed a bail application requesting release from the MDC into the custody of New York State at Rikers Island based on an outstanding parole hold. In his application, the defendant consented "to the lodging of a federal detainer immediately upon his transfer into state custody" to "ensure that [he] was transferred into . . .

2

federal custody in the unlikely event that he was released from state custody while his federal case was still pending." ECF Dkt. No. 11 at 2. The application also argued that given the nature of the proposed form of bail, "there is no danger that Mr. Levy poses a risk of flight." Id. Judge Bloom held a detention hearing, and the government consented to the application based on the conditions proposed by the defendant. Judge Bloom granted the application, expressly conditioning such release "into state custody only." ECF Dkt. No. 14. On March 18, 2020, a federal detainer was lodged against the defendant.

II.     Legal Standard

The Court must order the defendant detained if no condition will reasonably ensure the appearance of the defendant and the safety of the community. See 18 U.S.C. § 3142(e). The Court must consider the following factors: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves narcotics; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including—the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. See id. § 3142(g).

In the pre-trial context, the government bears the burden of showing that the defendant should be detained, either by showing by a preponderance of the evidence that the defendant is a flight risk, or by clear and convincing evidence that the defendant is a danger to the community. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001).

III.    Argument

   A.     The Nature and Circumstances of the Offense

As set forth above, after cutting off a GPS monitoring device, refusing to report to his parole officer as directed and fleeing from New York to Georgia, the defendant threatened to shoot a senior parole officer in the face. The defendant's brazen violations of his parole conditions demonstrate that he is a flight risk. And especially in light of his past violent felony convictions, the defendant's issuance of a threat to execute someone – a senior parole officer no less – by shooting her in the face shows that the defendant is a clear threat to public safety.

   B.     The Weight of the Evidence

The defendant threatened to shoot a senior parole officer in the face during a phone call that was overheard by several other parole officers, all of whom have consistent

recollections of the call.[1]  Moreover, the defendant's past violent felony convictions for shooting a gun into a crowd in front of a nightclub were known to the parole officer that spoke with the defendant, as well as to the other parole officers who heard the call.  Taken together, the weight of the evidence gives the defendant a strong incentive to flee rather than stand trial.

     C.  <u>The History and Characteristics of the Defendant</u>

  The defendant's violent criminal history and his repeated willful violations of the conditions of parole supervision show that he is a persistent danger to the community and a flight risk.  As described above, the defendant was previously convicted of attempted murder and other violent felonies because he shot a gun into a crowd of people while trying to kill one person in particular.  While he was serving a 14-year term in New York state prison, he was convicted of first degree attempted knowingly making or possessing dangerous contraband in prison because he had a shank – i.e., a sharpened object that he intended to use as a weapon against another person.  The defendant is also believed to have active gang associations.  Accordingly, the defendant's history shows by clear and convincing evidence that he is a danger to the community and weighs heavily in favor of detention.

  In addition, the defendant has flagrantly flouted the terms of his parole supervision.  As described above, just hours after being required to wear a GPS monitoring device, he chose to cut it off of his ankle and throw it down an incinerator.  He then refused to report to a parole officer as directed and fled to Georgia.  The defendant's willingness to not only violate his parole conditions, but also actively thwart attempts to monitor him, demonstrate that he is a strong flight risk.

     D.  <u>The Defendant's Proposed Bail Package Is Inadequate</u>

  Given the factors discussed above, there are no conditions of release that could assure that the defendant would not flee or pose a continuing danger.  Even if such conditions were possible, the defendant's proposed bail package would be wholly inadequate.  The defendant requests that he be released on his own recognizance, with no conditions relating to home confinement, curfew or monitoring.  The defendant does not suggest that he can present a financially responsible suretor who could co-sign a bond of any amount.  Instead, the defendant simply asks that the Court release him on the hope that he will both refrain from violence and appear as directed.  Based on his criminal history and very recent history of parole violations, any such hope would be misplaced.  Accordingly, the Court should deny the defendant's motion.

---

[1] There is no dispute that the defendant was in Georgia at the time of the call and that the parole officer who spoke with him was in Brooklyn, thus satisfying the interstate nexus requirement of 18 U.S.C. § 875(c).

4

### E. COVID-19 Does Not Justify the Defendant's Release

In his application, the defendant does not address his dangerousness or his risk of flight. Instead, based on generalized concerns regarding COVID-19 at Rikers Island, he requests that the federal detainer be lifted so that the defendant may be eligible for release. However, as set forth above, pursuant to 18 U.S.C. § 3142(a)(1), when "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," detention of the defendant is mandatory. COVID-19 does not alter this analysis or otherwise provide grounds for release of the defendant.

## IV. Conclusion

For the reasons set forth above, the government respectfully submits that the defendant is a danger to the community and a flight risk. There are no conditions of release that could assure the safety of the public or the defendant's future appearance. Even if such conditions existed, the defendant's proposed bail package does not adequately mitigate his dangerousness or risk of flight. The defendant should remain detained.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By: /s/ Andrew Wang
Andrew Wang
Assistant U.S. Attorney
(718) 254-6311

cc: Clerk of Court (RPK) (by ECF)
 Michelle Gelernt, Esq. (by Email and ECF)