

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

WK:ADW
F. #2020R00142

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 29, 2020

By ECF

The Honorable Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Keith Levy
                  Criminal Docket No. 20-87 (RPK)

Dear Judge Kovner:

      The government respectfully submits this letter in response to the defendant's letter motion, dated May 28, 2020, in which he moves, a second time, for pre-trial release. ECF Dkt. No. 33 ("Def. Mot."). For the reasons set forth below, the motion should be denied.

I.    Background

        A.    The Instant Offense

      In July 2006, the defendant was convicted in a New York state court following a jury trial for attempted murder and several other violent felonies. This conviction arose out of an incident in which the defendant pulled out a gun and shot at an intended victim several times, but missed and wounded multiple innocent bystanders. The defendant was sentenced to 14 years of incarceration and 5 years of post-release parole supervision.

      Since approximately May 2019, the defendant has been under the supervision of parole officers from the New York State Department of Corrections and Community Supervision ("DOCCS"). Due to the defendant's associations with suspected gang members and criminal activity in the New York City Police Department's 73rd Precinct (which covers certain parts of the Brownsville and Ocean Hill neighborhoods of Brooklyn, New York), the defendant was prohibited from entering that precinct as a term of his parole.

In violation of this condition, the defendant entered the 73rd Precinct on more than one occasion without prior authorization by the DOCCS. On January 24, 2020, a senior parole officer ("SPO") met with the defendant and required him to wear a GPS location monitoring device on his ankle as a new condition of supervision.

Less than 12 hours later, on January 25, 2020, the defendant cut the GPS monitoring device off of his ankle and threw it down an incinerator in a residential building in Brooklyn. On January 26, 2020, a parole officer responsible for monitoring the defendant's GPS location ("PO-1") called the defendant. On that call, the defendant acknowledged that he had destroyed the GPS monitor and refused a direction to report to parole the next day.

On January 27, 2020, the defendant failed to report to his parole officer as directed. That evening, after PO-1 unsuccessfully attempted to locate the defendant in Brooklyn, PO-1 called the defendant, who by this point was in Atlanta, Georgia. At the time of the call, several other parole officers, including the SPO who had required the defendant to wear the GPS monitoring device, were able to listen in on the conversation. During the call, the defendant refused PO-1's request that he voluntarily report to the DOCCS office. The defendant also said, in sum and substance, that he wanted to get "his hammer" (a slang term for a gun) and shoot the SPO in the face.

The defendant was indicted by a grand jury sitting in the Eastern District of New York on February 21, 2020 and charged with a single count of transmitting an interstate threat to kill or injure the SPO, in violation of 18 U.S.C. § 875(c). See ECF Dkt. No. 7. On April 22, 2020, the Court adjourned the trial date in this case sine die. ECF Dkt. No. 25.

B.  The Defendant's Criminal History

On December 9, 2005, the defendant was arraigned on an indictment in a New York state court for attempted murder, first degree attempted assault, second degree criminal possession of a weapon and first degree reckless endangerment. On July 26, 2006, following a jury trial, the defendant was convicted on all counts. As referenced above, he was sentenced to 14 years of incarceration and five years of post-release parole supervision on the attempted murder conviction, as well as several lesser concurrent sentences on the other counts.

On December 17, 2012, the defendant was arrested for having a shank while in prison. On April 11, 2014, the defendant was arraigned on an indictment for third degree criminal possession of a weapon and first degree knowingly making or possessing dangerous contraband in prison. The defendant pleaded guilty to attempted knowingly making or possessing dangerous contraband in prison in the first degree and was sentenced to 18 months to three years of incarceration.

### C. The Defendant's Prior Applications for Pretrial Release

During the defendant's initial appearance on February 12, 2020, United States Magistrate Judge Lois Bloom entered a permanent order of detention and remanded the defendant to the Metropolitan Detention Center ("MDC") in Brooklyn. See ECF Dkt. No. 4. On March 17, 2020, the defendant filed a bail application requesting release from the MDC into the custody of New York State at Rikers Island based on an outstanding parole hold. In his application, the defendant consented "to the lodging of a federal detainer immediately upon his transfer into state custody" to "ensure that [he] was transferred into . . . federal custody in the unlikely event that he was released from state custody while his federal case was still pending." ECF Dkt. No. 11 at 2. The application also argued that given the nature of the proposed form of bail (i.e., transfer to state prison), "there is no danger that Mr. Levy poses a risk of flight." Id. Judge Bloom held a detention hearing, and the government consented to the application based on the conditions proposed by the defendant. Judge Bloom granted the application, expressly permitting release "into state custody only." ECF Dkt. No. 14. On March 18, 2020, a federal detainer was lodged against the defendant.

On April 4, 2020, the defendant moved to lift the federal detainer so that he might become eligible for release from Rikers Island based on a New York State initiative to release parole detainees out of COVID-19 concerns. ECF Dkt. No. 16. Pointing to the defendant's violent criminal history and decision to abscond to Georgia to escape DOCCS supervision, the government opposed, arguing that the defendant was both a danger to the community and a flight risk. On April 9, 2020, Chief United States Magistrate Judge Cheryl Pollak conducted a hearing and denied the defendant's motion. ECF Dkt. No. 20.

On April 10, 2020, the defendant's first appointed lawyer, of the Federal Defenders of New York, moved to be relieved as counsel and requested that the defendant be transferred back to the MDC based on concerns over COVID-19 at Rikers Island. ECF Dkt. No. 21. On April 22, 2020, the Court relieved the defendant's first lawyer as counsel and appointed Gordon Mehler, Esq., as the defendant's new counsel under the Criminal Justice Act.

On May 5, 2020, the defendant was transferred from Rikers Island to the MDC pursuant to a writ of habeas corpus. ECF Dkt. No. 28. On May 14, 2020, the Court granted a stipulation and proposed order to revoke the May 17, 2020 bail order that allowed for the defendant's transfer to Rikers Island and reinstated the original permanent order of detention. ECF Dkt. No. 32.

### D. The Instant Application for Pretrial Release

On May 28, 2020, the defendant's new counsel filed yet another application for pretrial release, this time arguing that temporary release pursuant to 18 U.S.C. § 3142(i) is needed to allow the defendant to "meaningfully prepare for trial with counsel." Def. Mot. at 8. In support of this motion, defense counsel asserts that MDC protocols for arranging legal calls have allowed for "little more than treading water" and that he has been unable to have the quantity or types of attorney-client meetings needed to build trust and prepare for

3

trial. Although case-by-case accommodations for in-person legal visits may be arranged through the Bureau of Prisons ("BOP"), defense counsel's motion does not state whether he has made any attempts to arrange for such visits.

II.     COVID-19 Mitigation Efforts at the MDC Do Not Preclude Videoconferences

As the Court is well aware, the BOP has implemented numerous measures to mitigate the spread of COVID-19 within the MDC. Those measures include the suspension of social and legal visits, with case-by-case accommodations for attorney visits and legal calls. Inmates are also provided additional inmate telephone minutes each month. While defense counsel raises some generalized concerns regarding the health of the defendant— none of which is specific to the defendant, given his lack of underlying complicating health conditions—the thrust of his argument is that the MDC's mitigation protocols are hampering the defendant's ability to prepare for trial.

Despite defense counsel's claims that the MDC's health and safety measures interfere with his ability to develop a trusting relationship with his client, BOP counsel has informed the government that the MDC currently has videoconferencing ("VTC") capabilities, and that defense attorneys are able to request in advance attorney-client calls via VTC. While the number of attorney-client VTC calls that MDC can currently accommodate per day is limited (which MDC is working to improve), VTC calls can last up to either 30 minutes or two hours at a time, depending on the particular time slot reserved.

III.    Legal Standard

The Court must order the defendant detained if no condition will reasonably ensure the appearance of the defendant and the safety of the community. See 18 U.S.C. § 3142(e). The Court must consider the following factors: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves narcotics; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including—the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. See id. § 3142(g).

In the pre-trial context, the government bears the burden of showing that the defendant should be detained, either by showing by a preponderance of the evidence that the defendant is a flight risk, or by clear and convincing evidence that the defendant is a danger to the community. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001).

A prior bail determination "may be reopened . . . if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that

4

has a material bearing on the issue" of bail. 18 U.S.C. § 3142(f)(2)(B). "New and material information for Section 3142(f)(2)(B) purposes consists of something other than a defendant's own evaluation of his character or the strength of the case against him: truly changed circumstances, something unexpected, or a significant event." United States v. Esposito, 354 F. Supp. 3d 354, 358- 59 (S.D.N.Y. 2019).

Alternatively, "the judicial officer may, by subsequent order, permit the temporary release" of an inmate "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

IV. Argument

Defense counsel does not argue that Chief Judge Pollak's earlier bail determination should be reopened under Section 3142(f)(2)(B). Likewise, defense counsel does not argue the defendant is not a danger to the community or a flight risk. This comes as no surprise since no "new and material information" has come to light since that earlier bail determination. Instead, defense counsel argues that temporary release under Section 3142(i) is necessary in light of precautionary measures implemented at MDC due to COVID-19. Defense counsel is wrong that temporary release is appropriate, and this most recent bail application should be denied.[1]

Numerous courts in the Second Circuit have rejected the notion that the current restrictions BOP facilities by themselves constitute a Sixth Amendment violation or

---

[1] Defense counsel criticizes the government's earlier arguments that the defendant is both dangerous and a flight risk, pointing to the absence from the criminal complaint of an allegation that the defendant threatened to shoot a senior parole officer in the face in particular, and proffering that the defendant merely left New York "to see an aunt in Georgia." Def. Mot. at 5. Both characterizations are misleading. First, the criminal complaint states that the defendant said he "should have punched [the senior parole officer] in the face and shot her" and made a coded reference to a gun. ECF Dkt. No. 1 at 3. Whether or not the defendant said he wanted to shoot the senior parole officer in the face specifically as opposed to some other part of her body is completely immaterial to whether or not he is dangerous. Second, defense counsel conspicuously fails to acknowledge that the defendant fled to Georgia after cutting off a GPS ankle monitor and refusing an express direction to report to his parole officer, demonstrating his risk of flight.

Because defense counsel does not presently move for pretrial release based on 18 U.S.C. § 3142(e) and the factors enumerated in Section 3142(g), the government will not belabor its extensive earlier arguments regarding dangerousness and risk of flight. But to the extent it is relevant to the Court's determination on the instant motion, the government incorporates by reference its opposition to the defendant's earlier bail motion and its arguments as to why the defendant is both a danger to the community and a flight risk. See ECF Dkt. No. 17.

5

otherwise support release under 18 U.S.C. § 3142(i). See, e.g., United States v. Ellison, No. 18-CR-834-9 (PAE), 2020 WL 1989301, at *1-2 (S.D.N.Y. Apr. 27, 2020) ("[Defendant]'s general grievance about limited communications with counsel in the weeks since the pandemic struck do not establish a constitutional violation in his or any other case."); United States v. Rico, No. (S1) 18-CR-661 (PGG), 2020 WL 1934989, at *6 (S.D.N.Y. Apr. 21, 2020); United States v. Guzman, No. 20-CR-56 (PAC), 2020 WL 1700253, at *2 (S.D.N.Y. Apr. 8, 2020) ("To accept the defendant's generalizations about impediments to access to counsel and argument that release is necessary, especially in a case where no trial, hearing, or briefing schedule has been set yet, would logically result in the wholesale release of pretrial inmates."). As recognized by these courts, BOP is acting reasonably to respond to the pandemic in a way that preserves the fundamental rights of its inmates. That response includes the installation of videoconferencing capabilities so MDC inmates can maintain some form of interpersonal interaction with their attorneys during the period of restricted visitation. But defense counsel claims that this is not enough and that he needs the ability to conduct numerous, lengthy in-person meetings to build trust with the defendant. Defense counsel offers no authority for the proposition that the MDC's current accommodations, or that anything less than his desired amount of contact, rises to a constitutional violation or compels release under Section 3142(i).[2]

All of the cases cited by defense counsel are distinguishable. In United States v. Stephens, No. 15-CR-95 (AJN), 2020 WL 1295155 (S.D.N.Y. Mar. 19, 2020), see Def. Mot. at 3, the defendant was accused of possessing a firearm while on supervised release. In that case, the court found that the strength of evidence relied upon to demonstrate the danger the defendant posed to the community had been undermined by new information, 2020 WL 1295155 at *1, and that the defendant did not have a violent background or any prior convictions involving violent conduct or gun charges, id. at *2. Those facts bear no relation to the facts here, where the defendant's criminal history and the facts of this case amply demonstrate the defendant's dangerousness and risk of flight. Moreover, the court found release appropriate under § 3142(i) because the defendant had proffered specific, unrebutted facts demonstrating that the precautions taken by the BOP were impeding his ability to prepare for a hearing scheduled for less than one week away. Id. at *3. Here, by contrast, the defendant has no scheduled trial date and he has proffered no facts demonstrating an inability to prepare his defense.

Defense counsel's reliance on United States v. Perez, No. 19-CR-297 (PAE), ECF Dkt. No. 61 (S.D.N.Y. Mar. 18, 2020), see Def. Mot. at 3, is similarly inapposite. The court's order in that case made clear, at the outset, that its decision "is based on the unique confluence of serious health issues and other risk factors facing this defendant, including but not limited to the defendant's serious progressive lung disease and other significant health issues, which place him at a substantially heightened risk of dangerous complications should he contract COVID-19 as compared to most other individuals. Accordingly, this Order

---

[2] Defense counsel does not mention in the bail motion whether he has made any attempt to even request an attorney-client call with the defendant via VTC.

should not be construed as a determination by this Court that pretrial detention is unsafe or otherwise inappropriate as a general matter or in any other specific case." By contrast, BOP medical records do not suggest the 32-year-old defendant in this case has any underlying health conditions that heighten the risk of dangerous complications should he contract COVID-19. Moreover, the defendant's earlier counsel raised identical health-related arguments on the earlier motion for bail modification. Chief Judge Pollak was not moved by those arguments then, and there is no reason for the Court to find otherwise.

United States v. Chandler, No. 19-CR-867 (PAC), ECF Dkt. No. 19 (S.D.N.Y. Mar. 31, 2020), see Def. Mot. at 4, is also unavailing. In that case, the only fact particular to the defendant that appears to have motivated the court's decision to grant temporary release was the existence of a trial date scheduled for May 11, 2020. Hence, notwithstanding any possible adjournments of that trial date, the Chandler court granted temporary release due to concerns regarding the defendant's ability to prepare for his defense where the trial was set for just 40 days away. The same concern does not exist here, where there is no trial date.

United States v. Harris, No. 18-CR-330 (PKC) (E.D.N.Y. May 18, 2020), see Def. Mot. at 4, is even further afield. As defense counsel acknowledges, Judge Chen's temporary release order, which required a $200,000 surety bond, did not articulate the basis for release. In addition, the defendant in that case moved primarily based on health concerns. The defendant had asthma and had been identified by the BOP as being at higher risk of serious health complications relating to COVID-19. Again, no such health concerns exist for the defendant here.

In sum, the Court should reject defense counsel's attempt to turn the tables and use the mitigation efforts put in place by BOP to protect the population from COVID-19, principally the limitations on in-person legal visits, to suggest that those same efforts create circumstances justifying release. Defense counsel has not shown any significant, long-term infringement on his ability to consult with the defendant, much less provided a reason to believe the efficacy of the defense has been adversely impacted. He also has not demonstrated that the limitations put in place by the BOP fail to serve and further a "legitimate penological interest[]." Overton v. Bazzetta, 539 U.S. 126, 131-32 (2003) (upholding restrictions on prison visitation rights). They do serve such an interest, which is protecting the health of the inmates, employees who work at the MDC, and their families and contacts.

V.   <u>Conclusion</u>

   For the reasons set forth above, the government respectfully submits that the defendant remains a danger to the community and a flight risk, and that temporary release is not warranted.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:   /s/ Andrew Wang
   Andrew Wang
   Assistant U.S. Attorney
   (718) 254-6311

cc: Clerk of Court (RPK) (by ECF)
   Gordon Mehler, Esq. (by Email and ECF)