

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

RMT:ADW
F. #2020R00142

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 27, 2020

By ECF

The Honorable Rachel P. Kovner
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Keith Levy
               Criminal Docket No. 20-87 (RPK)
              **ORAL ARGUMENT REQUESTED**

Dear Judge Kovner:

      The government respectfully submits this reply in further support of its October 26, 2020 motion in limine. (ECF #37). As set forth below, evidence regarding the defendant's violent criminal history and suspected involvement in the Old Timers Day shooting is highly probative on the core trial issues – (1) whether an ordinary, reasonable parole officer familiar with the context of the defendant's words would interpret them as a true threat; and (2) whether the defendant uttered a threat with the requisite mental state. Remarkably, the defendant does not address either issue. Instead, the defendant makes propensity arguments based on a fundamental misunderstanding of both the elements of a Section 875(c) charge and the government's theory of the case. As described below, the proffered evidence does not relate to propensity and is fundamental to proving the elements of the crime. For these reasons and the reasons described in the motion, the Court should permit the government to introduce the proffered evidence as direct proof of the defendant's guilt. Alternatively, such evidence should be admitted under Rule 404(b) as probative of the defendant's mental state.

I.    The Proposed Evidence Is Direct and Intrinsic Evidence of the Charged Crime

      A.   Evidence of Past Violence Is Permissible to Prove Context of the Threat

      The government's theory of the case is simple: the defendant's statement that he wanted to get "the hammer" to shoot the SPO in the face was a true threat in light of the defendant's known and suspected historical involvement in gun violence – i.e., the context available to an ordinary, reasonable parole officer who heard the alleged threat. See United States v. Sovie, 122 F.3d 122, 125 (2d Cir. 1997). Without that context, testimony by parole

officers that they interpreted the defendant's words as a threat might appear to jurors to be an overreaction, especially in light of the ambiguous, past tense wording of the alleged threat. See United States v. Malik, 16 F.3d 45, 49 (2d Cir. 1994) (recipients' states of minds and reactions particularly significant to remove ambiguity by shedding light on context of alleged threat); United States v. Stock, 728 F.3d 287, 300 (3d Cir. 2013) ("[I]n the right context, an expression of an intent to injure in the past may be circumstantial evidence of an intent to injure in the present or future.").[1]

Contrary to the defendant's argument, the proffered evidence is not impermissible propensity evidence because its purpose is not to suggest to the jury that the defendant must have made an interstate threat because he is a violent person. Instead, the evidence is probative of whether the recipients of the alleged threat "had a reason to believe that the [defendant] had a propensity to engage in violence," which is relevant to the true threat analysis. United States v. Ivers, 967 F.3d 709, 718 (8th Cir. 2020); see United States v. Syring, 522 F. Supp. 2d 125, 130 (D.D.C. 2007) (same); United States v. Fulmer, 108 F.3d 1486, 1502 (1st Cir. 1997) (evidence that a defendant had engaged in acts showing him to have a tendency to be violent is not necessarily unfairly prejudicial because in "a threats prosecution, the general factual context in which the statement was made bears significantly on whether an ambiguous statement could reasonably read as a threat"); United States v. Carter, Case No. 94-CR-628 (ACW), 1995 WL 480991, at *2 (N.D. Ill. Aug. 11, 1995) ("[E]vidence of earlier acts of violence can be relevant to evaluating the force of the threat, so long as the victim knows of the other acts."). In other words, evidence that tends to prove how the recipients of an alleged threat perceived the defendant, including whether the defendant had a propensity to commit violence, is admissible in a Section 875(c) case because it relates to whether an alleged threat should be taken seriously.

The distinction between impermissible propensity evidence and permissible evidence of a defendant's propensity for violence (that is known to a recipient) in the true threat context is a subtle but crucial one. The defendant's response elides this difference, suggesting that the government can "easily and coherently tell the story of Mr. Levy's grievances and frustration of being on parole" leading up to the January 27, 2020 phone call, without presenting any evidence of the defendant's criminal history or suspected involvement in recent crimes. Def. Br. at 7. But this argument substitutes the defendant's theory of the case for the government's. As explained above, the government does not allege that the defendant uttered a true threat simply because parole officers were aware of the defendant's recent issues with supervision. Instead, evidence of the defendant's known past violence was critical to the parole officers' interpretation and is thus "necessary to complete the story of the crime [on] trial." United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir. 1997) (citation omitted).

Indeed, the weakness in the defendant's argument is clear when applied to a hypothetical situation with facts just slightly different from those in this case. For example, had

---

[1] The defendant takes issue with the fact that the defendant uttered the alleged threat to PO-1 instead of the SPO. If anything, this ambiguity makes additional contextual evidence all the more important. In addition, if "the speaker intentionally communicated the alleged threat to someone, it is not determinative that he did not communicate it directly to its object." Porter v. Ascension Parish Sch. Bd., 393 F.3d 608, 616 (5th Cir. 2004); see United States v. Doggart, 906 F.3d 506, 511 (6th Cir. 2018) (Sutton, J.) ("Section 875(c) does not require the defendant to communicate the threat to the victim.").

the defendant's only past conviction been for wire fraud, evidence of that conviction would be irrelevant in a subsequent Section 875(c) trial because knowledge of a past wire fraud conviction would not inform a parole officer's interpretation of words about a "hammer" and shooting a parole officer in the face. However, the defendant's argument implies that the government would be limited to the same evidence in trying him for making an interstate threat in either situation. That result would be absurd and divorced from the factors described by numerous courts that juries are allowed to consider when evaluating whether a statement is a true threat.[2]

Whether the defendant uttered a true threat will be hotly contested at trial. The facts that informed parole officers' interpretation of the defendant's words comprise the context of the alleged threat and will be key evidence that is directly probative of the elements of Section 875(c). Hence, the proffered evidence is "inextricably intertwined with the evidence" regarding the Section 875(c) charge, is "necessary to complete the story of the crime on trial," United States v. Lyle, 919 F.3d 716, 736 (2d Cir. 2019) (citation omitted), and should be directly admissible, subject to the requirements of Rule 403.

      B.   Evidence of Past Violence Is Directly Probative of Defendant's Mental State

The government's proffered evidence is also directly relevant to the defendant's mental state. To prove a Section 875(c) offense, the government must show that the defendant either intended that his statement be received as a threat **or** knew that it would be received as a threat. Elonis v. United States, 575 U.S. 723, 135 S. Ct. 2001, 2012 (2015); United States v. Jordan, 639 F. App'x 768, 769 (2d Cir. 2016).[3] And as the Second Circuit explained in Sovie, external evidence of prior bad acts is relevant to proving a defendant's mental state in the Section 875(c) context if the defendant knew or believed the recipient of his threat was aware of the prior bad acts. See Sovie, 122 F.3d at 126. Put another way, the intention behind a defendant's words turns on his audience, and the same words spoken to someone familiar with a defendant's past bad acts may carry menace that words spoken to a stranger would not.

Similar to his argument regarding the true threat prong, the defendant either misunderstands or misconstrues the mental state element of a Section 875(c) charge. See Def. Br. at 8 ("How can [the defendant] be the same as when he was a teenager . . . ?"). Mark Sovie's mental state when he abused his ex-wives was not relevant in his trial for transmitting an interstate threat, nor is the defendant's mental state when he committed past felonies relevant here. Instead, the existence of the past convictions is what matters. Evidence that the defendant knew PO-1 was aware of the defendant's violent criminal history would tend to prove the defendant knew or intended that his words be received as a threat. See Sovie, 122 F.3d at 126. After all, the defendant must have known that references to shooting a parole officer would be

---

[2] The critical issue is what relevant information was available to the recipient of the alleged threat. Thus, by way of another example, the defendant's prior convictions and suspected involvement in a shooting would be irrelevant had he uttered the alleged threat to a stranger because those facts would be unknown to the stranger and hence could not inform his interpretation of the defendant's words.

[3] The defendant incorrectly states that since Elonis, "a defendant must be shown to have intended a threat." Def. Br. at 15. As Elonis and its progeny make clear, that is an incomplete statement of the law. Knowledge that a statement will be received as a threat, which is essentially a recklessness standard, also satisfies Section 875(c)'s mental state requirement.

3

taken more seriously by someone who knew of the defendant's past violent felonies. And just as in Sovie, evidence that the defendant was actually convicted of prior felonies would corroborate that mental state evidence.

Relatedly, the defendant's reliance on cases stating that other acts evidence becomes less probative with the passage of time is misplaced. See Def. Br. at 10-11. None of those cases involved Section 875(c) threats. Instead, those cases involved more typical situations in which a past bad act might demonstrate a similar modus operandi or pattern of behavior. See, e.g., United States v. Garcia, 291 F.3d 127, 138 (2d Cir. 2002) (minor drug conviction not probative of mental state as to charged drug transaction involving coded language because no evidence showed past crime involved code or same participants); United States v. Gonzalez, No. 08 Cr. 363 (BSJ), 2009 WL 1834317, at *2-3 (S.D.N.Y. June 24, 2009) (earlier drug dealing convictions were not similar to charged crime where police found drugs during a strip search of defendant after arrest for robbery). In such cases, older past acts may be less relevant because, as the defendant points out, an individual may change his ways.[4] But here, the government is not alleging that the defendant's past convictions help prove his mental state as to similar crimes. Instead, in a prosecution for making an interstate threat, his past convictions and others' knowledge of those convictions are probative of his mental state with respect to the threat. While the passage of time might impact the relevance of such evidence in some cases, that is not so here, where the defendant's past convictions were an intrinsic part of the subtext for the defendant's interactions with his parole officers.

II. The Proffered Evidence Is Admissible in the Alternative Under Rule 404(b)

In the Rule 404(b) context, other acts evidence is admissible for "**any** purpose other than to show a defendant's criminal propensity, as long as the evidence is relevant and satisfies" Rule 403. United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (emphasis added). To the extent the Court finds that Rule 404(b) controls, the proffered evidence is "subject only to general strictures limiting admissibility such as Rules 402 and 403" because it is relevant to the defendant's state of mind, which is a "proper purpose" under Rule 404(b). Huddleston v. United States, 485 U.S. 681, 688 (1988). Hence, the admissibility analysis for the proffered evidence is essentially the same, whether under Rule 403 or Rule 404(b). As explained below, because the probative value of the proffered evidence is not substantially outweighed by unfair prejudice, it should be admitted.

III. The Evidence's Probative Value Is Not Substantially Outweighed by Unfair Prejudice

As discussed above, the probative value of the proffered evidence is strong in the context of a Section 875(c) prosecution. The only real issue before the Court is whether the probative value is substantially outweighed by unfair prejudice. It is not. As explained in its motion, the government seeks to introduce only enough evidence to inform the jury that the defendant was convicted of felonies arising from a shooting and his possession of a prison shank,

---

[4] For example, if the government sought to admit evidence of the defendant's 2005 convictions to prove intent in a present-day prosecution for attempting to murder the same victim or victims, he might have a better argument as to the diminished relevance of his past convictions.

and that the defendant was a suspect in a recent shooting in Brooklyn. The government does not seek to introduce evidence regarding the underlying details of those crimes, no matter how heinous the defendant's past conduct. A curated presentation of the evidence that conveys to the jury the existence of the prior convictions and the defendant's role as a shooting suspect is not more inflammatory than a threat to take a gun and shoot a parole officer in the face. See United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999).

The defendant's prejudice argument rests on a caricature of how the government intends to introduce the proffered evidence. See Def. Br. at 10 ("[I]t is abundantly clear that a jury would likely conclude that if Mr. Levy were involved in two separate shootings with over 15 total victims he most assuredly must possess the requisite intent to communicate a true threat to SPO Jane Doe."). The government need not and will not rely on presenting lurid details regarding, for instance, the nature of victims' injuries. As such, there is little concern that the jury's passions will be inflamed. In addition, the government's requested approach distinguishes this case from those cited by the defendant in which courts found certain evidence to be unfairly prejudicial. See, e.g., United States v. Al-Moayad, 545 F.3d 139, 161 (2d Cir. 2008) (extensive testimony regarding bombing was graphic, supplemented by photos and videos, and related to an issue that was not in dispute at trial).

IV. Conclusion

For the reasons explained in the motion and above, evidence regarding the defendant's past convictions and suspected involvement in the Old Timers Day shooting is highly probative of the key Section 875(c) elements that will be disputed at trial. The government intends to minimize any unfair prejudice by presenting the proffered evidence in a general, summary manner. Accordingly, the Court should permit the government to introduce such evidence as direct Rule 403 evidence, or alternatively as Rule 404(b) evidence relating to intent and knowledge.[5]

Respectfully submitted,

SETH D. DUCHARME
Acting United States Attorney

By: /s/ Andrew Wang
Andrew D. Wang
Assistant U.S. Attorney
(718) 254-6311

cc: Clerk of Court (RPK) (by ECF)
Defense counsel (Email)

---

[5] The government reiterates that any unfair prejudice can be further mitigated by appropriate limiting instructions. See United States v. Snype, 441 F.3d 119, 129-30 (2d Cir. 2006) (noting that "the law recognizes a strong presumption that juries follow limiting instructions"); United States v. Mercado, 573 F.3d 138, 142 (2d Cir. 2009) (upholding Rule 403 determination where district court "gave several careful instructions to the jury regarding what inferences it could draw from the admitted evidence").