# MEHLER LAW PLLC
747 Third Avenue ♦ 32nd Floor ♦ New York, NY 10017-2803

December 8, 2020

**By ECF**
The Honorable Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 1201

Re: *United States v. Keith Levy* 20-CR-87 (RPK)

Dear Judge Kovner:

      We write to orient the Court in advance of our December 11th status conference and to move for selected relief.  This submission supplements two previous submissions (Dkt. #33 and Dkt. #40).  We have raised the issues that follow with AUSA Andrew Wang by providing an earlier draft of this letter brief on Sunday so as not to unfairly surprise him.

      As the Court may recall, our client Keith Levy was arrested on February 4, 2020, and has been in custody ever since.  He is charged with a single count of 18 U.S.C. § 875(c), "threatening" a parole officer in an interstate call he did not even initiate.  The case grows out of one very brief, isolated exchange on January 27th with one of the parole officer's colleagues.  That second parole officer apparently spoke in soothing, confidential tones to the agitated Mr. Levy while tricking him into believing they were having a private conversation. In that call, Mr. Levy expressed anger and frustration at the humiliating manner in which the mean and uncaring bureaucrat was treating him.

      We will assert again at the upcoming oral argument on the government's motion (Mr. Wright will be handling the oral argument) to admit poisonously (indeed fatally) prejudicial propensity evidence "in sheep's clothing" that this federal case (as opposed to the New York State Parole case) has never really been about any threat.  In preparing for Mr. Levy's trial in recent days, before it was scotched again due to the current coronavirus surge, we reviewed the gravamen of the state's parole violation case against him (Warrant # 828187).  It bears quoting:

> The Parolee allegedly violated the conditions of Parole when he did not properly charge his GPS device three times, removed his GPS device without permission which resulted in a master tamper alert and did not report to Parole as directed. He plead guilty to Charge 1 (did not properly charge his GPS device) and Charge 6 (did not report to Parole as directed).

For this, Mr. Levy accepted the draconian minimum parole "hold" of 12 months. The "threat" case, which had also been charged, was dismissed with prejudice. *See generally* Dkt. #40 at 1-4.

### **Reconsideration of Release on Bail or Temporary Release**

After failing on March 5th to win release on bail with previous counsel from the Federal Defender Service, current counsel was appointed and moved to have Mr. Levy released on new grounds: (1) the coronavirus that has continued to infect and endanger prisoners disproportionately; and (2) pursuant to 18 U.S.C. § 3142(i) for temporary release in order to enable trial preparation. After extensive oral argument, that motion was denied on June 1st, 2020.

We now move again for Mr. Levy's release, adding yet a third ground. Mr. Levy's parole hold will be lifted on February 10, 2021, and no trial is likely before then based on the bleak prognostication of coronavirus czar Dr. Anthony Fauci and others. *See* "Dr. Fauci Sees 'Terribly Painful Months' Ahead", *New York Times*, Nov. 22, 2020. Even assuming a Guidelines calculation of 21-27 months instead of an initial informal estimate by the prosecution of 6-12 months, Mr. Levy's continued detention will constitute a violation of due process once the parole hold is lifted, less than two months from our upcoming status conference.

In *United States v. Millan*, 4 F.3d 1038 (2d Cir. 1993), the Second Circuit summed up the principle as follows: "a violation of due process occurs" when pretrial "detention becomes excessively prolonged[.]" Id. at 1043. Although the Second Circuit has upheld lengthy projected pretrial detention in heavy-duty terrorism cases, *see, e.g., United States v. El-Hage*, 213 F.3d 74, 79-81 (2d Cir. 2000) (30-33 months for key alleged terrorist charged with killing hundreds of people), it has also ordered the release of a detainee after a similar length of time in another serious case where "due process [could] not tolerate any further pretrial detention in this case." *United States v. Ojeda Rios*, 846 F. 3d 167, 169 (2d Cir. 1988); *see also United States v. Gonzales Claudio*, 806 F.2d 334, 342-43 (2d Cir. 1986) (release after 14 months).

Here, it is doubtful Mr. Levy would be sentenced to 21 months in the unlikely event of a conviction. We hope we would be able to persuade the Court that the nearly total lockdown for many months, resulting in the extensive inability to socialize, exercise or even use the law library, combined with the constant terror of fast-spreading coronavirus in prison means the hard time Mr. Levy has already served should be counted as double time at least. And even if that turns out not to be the case, by early February, Mr. Levy will have served well over half of a Guidelines sentence while being presumed innocent!

Moreover, although the points in our earlier bail submission remain valid, *see generally* Dkt. #30 at 4-6, the prosecution's case has grown weaker, not stronger. Now we know the

current prosecution is not primarily a threat case at all. It is a "squeeze" case, where law enforcement seeks to further co-opt this Court and a host of other courtroom players, including a jury pool, in service of its continuing albeit misguided vision, that driving Mr. Levy crazy in harsh coronavirus detention will finally result in his coughing up potentially useful information about an infamous and partially unsolved 2019 Old Timers Day shooting in Brooklyn's most violent neighborhood (the 73rd Precinct), where Mr. Levy's mother lives. After going on 10 months, this strategy has been a failure. And among its latest casualties is one of the undersigned defense counsel, who has now contracted Covid himself, almost surely as a result of recently visiting the Metropolitan Detention Center where Mr. Levy is housed.

Very sensibly, the prosecution has stayed away from even referencing the most analogous Eastern District threat case, *United States v. Segui*, No. 19-cr-188 (KAM), 2019 WL 8587291 (E.D.N.Y. December 2, 2019). We see the prosecution's wisdom in failing to distinguish, indeed completely ignoring, that case because it is so devasting to this case. *Segui* is a reminder of what can happen even in a threat case that was much stronger than this case: a verdict of acquittal (here after expending a large amount of financial, logistical and health capital) because the jury is not persuaded beyond a reasonable doubt that a lone, frustrated outburst is not more of a cry for help than an imminent vicious attack.

The weakness of the government's proof (the insolated nature of the remark, the fact that Mr. Levy never called anyone to deliver it, the fact that he retreated to a relative in Georgia rather than stalking any potential victim, and all the other factors set out in our most recent papers, Dkt. #40 at 8, must also be a leading factor in any bail decision, *see* 18 U.S.C. § 3142(g)(2) (strength of government's case as bail factor).

Really the only thing with a chance to tip the scales lopsidedly is if this Court decides to admit any of the unworthy "other act" evidence that will virtually lock in an unfair conviction. But here too the Court understands the totality more deeply than it did earlier. The violent crime for which Mr. Levy was convicted occurred many, many moons ago when he was a teenager (he is now 33). And there has been a woefully insufficient showing about the Old Timers' Day shooting the police and federal agents want to squeeze Mr. Levy on. We know next to nothing about who will testify about what rank hearsay and why that would even be countenanced by the Court in the absence of a substantial hearing beforehand. That leaves the so-called "shank," and here too the government's proof has slipped considerably. Formerly, we thought this was some fearsome, jagged piece of metal designed to gouge out someone's intestines. In fact, in preparing for trial, we discovered that it is a toothbrush with a pointy head! Yes, a plastic toothbrush, something akin to the plastic mechanical pencil that one of us always carries in his pocket. All of these factors change the calculus, and require the Court to release Mr. Levy on plenary bail or more circumscribed temporary release, with the package to be worked out with the prosecution. We anticipate Mr. Levy would again live with his sister Adonna, and have the support services about which the parole authorities were seemingly indifferent, in order to aid Mr. Levy's readjustment after many years in prison.

The release on plenary bail or temporary release is also called for by our earlier arguments. We have continued to have difficulty preparing for trial. We do half-hour telephone calls and video chats, and now in-person visits will be out of the question. But typically three

days of advance notice is required for the calls and video conferences.  And there have been many times since the beginning where scheduled calls have been ignored or forgotten by prison authorities and anticipated visits cancelled. Just last week, we had a call scheduled for Monday that never came through without explanation. When we tried to reschedule that call, we were told nothing could be scheduled until Friday, at which point our call was yet again postponed due to an incident near our client's cell block. No trusting bond can ever really be formed with a client under these conditions, in violation of the Sixth Amendment right to counsel. Thus, temporary release at a minimum under 18 U.S.C. §3142(i), to facilitate trial preparation is essential. *See United States v. Chandler,* 19-cr-867 (PAC) (S.D.N.Y. Mar. 31, 2020), (temporarily releasing defendant charged with violence to prepare for trial); *see also United States v. Stephens,* 447 F. Supp. 3d 63 (S.D.N.Y. 2020).

Finally, the wreckage wrought by the coronavirus continues apace.  According to the Covid Prison Project, 212,000 inmates have already contracted the virus despite the release of many inmates and mitigation measures within prison walls.  At San Quentin State Prison in California, where Johnny Cash recorded one of his famous concerts, more than 75% of the inmates were infected. Through mid-November, more than 20,000 cases have been reported, likely to be the highest number of infections since the pandemic began.  *See Wall Street Journal*, November 28-29, 2020 at A5.  In the federal system, the Metropolitan Detention Center has had more infections in the past two weeks than any time since the start of the pandemic. *See New York Law Journal,* "As New York Coronavirus Metrics Worsen, State Prisons See Outbreaks," Dec. 3, 2020. And we know things will get much worse this winter.

Therefore, Mr. Levy's temporary release or plenary release on bail is compelled on (a) elementary health grounds, (b) on Sixth Amendment right to counsel grounds, and (c) on Fifth Amendment due process grounds.

**Miscellaneous Matters**

We also will ask the Court at our next conference to consider at least two measures to conclude any rescheduled trial as quickly as feasible, given the continuing pandemic.  First, we request a Zoom hearing to determine if particular parole witnesses truly can testify to what they heard as opposed to the hearsay imparted to them by others.  We worry that, instead of true corroboration, we merely have confirmation bias: a blue wall that hears the same "threat" because these other officers understandably want to be supportive of someone who we understand is their boss. Ordinarily, this could be accomplished through a searching *voir dire* at the beginning of the testimony, moving to exclude any witness who suffers from confirmation bias and a lack of independent personal knowledge of what transpired.  But why prolong the in-court portion of the trial when it can be taken care of beforehand so that no bells have to be un-rung after impermissible testimony.  In a similar vein, asking the government to turn over witness statements under 18 U.S.C. § 3500 two weeks before trial instead of the customary single week in most federal cases will help insure that the trial will run more smoothly and without necessary delay.

5

      In sum, we respectfully request that the Court 1) grant Mr. Levy's plenary or at least temporary release on bail; and 2) grant a Zoom hearing to determine the bona fides of particular parole witnesses who may just be parroting what they heard others heard, and 3) ask the government to turn over witness statements two weeks before trial.

                                      Sincerely,

                                        */s/ Gordon Mehler*
                                        Mehler Law PLLC
                                        747 Third Avenue, 32nd Floor
                                        New York, NY 10017

                                        */s/ Christopher D. Wright*
                                        305 Broadway
                                        Suite 1001
                                        New York, New York 10007

                                        *Attorneys for Defendant Keith Levy*