

U.S. Department of Justice

United States Attorney
Eastern District of New York

271 Cadman Plaza East
Brooklyn, New York 11201

ALB:ADW
F. #2020R00142

December 10, 2020

By ECF

The Honorable Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Keith Levy
             Criminal Docket No. 20-87 (RPK)

Dear Judge Kovner:

      The government respectfully submits this letter in response to the defendant's letter motion, dated December 9, 2020, in which he moves, now for a third time, for pre-trial release. ECF Dkt. No. 45 ("Def. Mot."). The defendant also requests a remote hearing by videoconferencing to prematurely evaluate potential government witnesses and that the Court order the government to produce witness statements two weeks before the start of trial. For the reasons set forth below, the motion should be denied.

I.     Background

      As the Court is aware, the defendant has twice previously moved for pretrial release.[1] On April 9, 2020, Chief United States Magistrate Judge Cheryl Pollak conducted a hearing and denied the defendant's first bail motion. ECF Dkt. No. 20.

      On May 28, 2020, the defendant again moved for pretrial release, this time arguing that temporary release pursuant to 18 U.S.C. § 3142(i) is needed to allow the defendant to "meaningfully prepare for trial with counsel." ECF Dkt. No. 33 at 8. In support of this motion, the defendant asserted that COVID-19 mitigation protocols at the Metropolitan Detention Center ("MDC") were impeding attorney-client communications and

---

[1] The government incorporates by reference the factual background and legal argument presented in its opposition to the defendant's May 28, 2020 request for pretrial release. See ECF Dkt. No. 34.

preventing him from being able to adequately prepare for trial. On June 1, 2020, the Court heard argument from the parties and denied the application.

Trial in this matter was previously scheduled to begin on December 14, 2020. On November 24, 2020, following Chief United States District Judge Roslynn R. Mauskopf's issuance of Administrative Order 2020-26, which suspended all jury trials in the Eastern District of New York through January 19, 2021, the Court adjourned the December 14 trial date.

On December 9, 2020, the defendant requested that the Court reconsider its June 1 bail decision, principally raising three arguments. First, the defendant argues that his risk of contracting COVID-19 at the MDC is a basis for release. Second, the defendant asserts that his time in pretrial detention and the delays in this case brought on by necessary COVID-19 measures at the MDC constitute a due process violation. And third, the defendant argues that temporary release is needed to "facilitate trial preparation." Def. Mot. at 4. Separately, the defendant asks that the Court schedule a "Zoom hearing to determine if particular parole witnesses truly can testify to what they heard as opposed to the hearsay imparted to them by others," and that "the government . . . turn over witness statements under 18 U.S.C. § 3500 two weeks before trial." Id.

II.  Legal Standard

The Court must order the defendant detained if no condition will reasonably ensure the appearance of the defendant and the safety of the community. See 18 U.S.C. § 3142(e). The Court must consider the following factors: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves narcotics; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including—the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. See id. § 3142(g).

In the pre-trial context, the government bears the burden of showing that the defendant should be detained, either by showing by a preponderance of the evidence that the defendant is a flight risk, or by clear and convincing evidence that the defendant is a danger to the community. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001).

A prior bail determination "may be reopened . . . if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue" of bail. 18 U.S.C. § 3142(f)(2)(B). "New and material information for Section 3142(f)(2)(B) purposes consists of something other than a defendant's own evaluation of his character or the strength of the case against him: truly

changed circumstances, something unexpected, or a significant event." United States v. Esposito, 354 F. Supp. 3d 354, 358- 59 (S.D.N.Y. 2019).

Alternatively, "the judicial officer may, by subsequent order, permit the temporary release" of an inmate "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

III. Argument

A. A Generalized Risk of Exposure to COVID-19 Is Not a Basis for Release

Renewing his earlier arguments regarding the risk of exposure to COVID-19, the defendant argues that pretrial release is compelled on "elementary health grounds." Def. Mot. at 4. The defendant is a 33-year-old man with no apparent preexisting conditions that render him particularly vulnerable to COVID-19. Nor does he offer any new facts or changed circumstances regarding his own particular health risks. While the government takes the defendant's concern of contracting COVID-19 seriously, there is no reason to believe that the defendant, in the absence of any evidence to the contrary, is predisposed to COVID-19 or is at all likely to experience complications were he to contract the infection.

The speculative possibility of contracting COVID-19 is not in itself a "compelling reason" supporting release under the Act. As Chief Judge Mauskopf explained in the compassionate release context, a generalized risk of potential exposure to COVID-19 while in custody is an insufficient basis for release. See United States v. Flores, No. 15- CR-152 (RRM), at 2 (E.D.N.Y. Apr. 12,2020) ("[T]he Court cannot conclude that the BOP will be unable to manage a more widespread outbreak of the virus or will be unable to handle the medical needs of any inmate at MDC."); see also United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). While the BOP and the government recognize the seriousness of COVID-19, the risk of potential exposure in a BOP facility cannot alone form the basis to release a prisoner who makes a motion for release, particularly in a case such as this one where the defendant has proffered no risk factors that could be described as "compelling."

In addition, numerous courts have denied requests for temporary release where the defendant poses a danger to the community and a flight risk, even where the defendant has significant medical conditions. For example, in United States v. Passley, the court refused to release a defendant charged with possessing a firearm as a felon, who violated the terms of his supervised release by attempting to shoot a stranger. 19-CR-534 (WFK), 2020 WL 1815834, at *3 (E.D.N.Y. Apr. 9, 2020). In United States v. Jackson, the court rejected bail for a defendant who appeared on the high risk-inmates list and was charged with possessing a firearm as a felon. 20-CR-46 (EK), ECF No. 16. In United States v. Bryant, the court wrote that, with regard to a defendant on the BOP's high-risk inmates list, while it "is

3

cognizant of the severity of the current pandemic, particularly as it relates to vulnerable individuals such as Defendant, it does not present a sufficiently compelling reason for release in this case" because the "Defendant poses a danger to the community and a flight risk if released, even temporarily." 18-CR-92 (S-5) (WFK), ECF No. 247 at 8. See also United States v. Jimenez, No. 20-CR-122-LTS, 2020 U.S. Dist. LEXIS 72436, at *5-10 (S.D.N.Y. Apr. 24, 2020), (denying application for release despite "two serious health conditions" that placed him on the high-risk-inmates list because the defendant was awaiting trial on drug and firearm charges that exposed him to a ten-year, "flight-inducing" mandatory minimum sentence).

As it has argued in previous filings, the defendant here is both dangerous and a flight risk. When considering a bail motion under Section 3142(i), the "compelling" reason for the defendant's release must still be balanced against the defendant's dangerousness to the community and risk of flight. A young, healthy inmate's generalized risk of exposure to COVID-19 is not a per se "compelling" reason under Section 3142(i), and even if it were, it would be outweighed by the defendant's clear dangerousness and risk of fleeing.

### B. The Defendant's Detention Does Not Violate Due Process

While the defendant correctly states that prolonged pretrial detention may sometimes violate due process, he tellingly fails to describe the legal standard for that analysis or how it applies here. As described below, the defendant has not showed a violation of due process.

In assessing whether the length of pretrial detention violates due process, courts are to consider three factors: "(i) the length of detention; (ii) the extent of the prosecution's responsibility for the delay of the trial; and (iii) the strength of the evidence upon which the detention was based." United States v. Millan, 4 F.3d 1038, 1043 (2d Cir. 1993). In assessing the length of detention, courts are to consider "non-speculative aspects of future confinement." Id. at 1044 (citation omitted). The analysis is fact-specific, and even a prospective length of detention that weighs in favor of release does not in and of itself establish a constitutional violation. See id. at 1044.

In Millan, the defendants had been detained for 24 months, and a retrial about a month away was estimated to take four to five months, such that they would be "detained between thirty and thirty-one months without a formal finding of guilt." Id. at 1044. The government was responsible for a "significant delay" in bringing the case to trial due to a failure of communication regarding the misconduct of certain agents involved in the investigation. Id. at 1045. Finally, the Second Circuit concluded that both defendants were dangerous and flight risks. See id. at 1045-48. Taking all of those factors into account, the court found that continued pretrial detention was not unconstitutional, despite the nearly three year period of pretrial detention and the government's responsibility for delay. See id. at 1049.

4

Applying this standard to the defendant's case, it is clear that the defendant's continued pretrial detention does not violate due process. First, the defendant has been detained for approximately eight months. Based on the number of anticipated witnesses, trial would last no longer than a few days. At this stage, when trial may occur inevitably requires some speculation, but it is clear it could not occur until January 19, 2021 at the very earliest. As such, the non-speculative estimate for the defendant's pretrial detention before a determination of guilt or innocence would be approximately 12 months. The defendant cites no cases standing for the proposition that 12 months of pretrial detention violates due process. And even if trial could not occur until February or later, the length of the defendant's pretrial detention would still not approach the level found in other cases to be excessive. Second, the government bears no responsibility for the delay in trial. The government has produced Rule 16 discovery in a timely manner and has taken no dilatory steps in this case. Instead, it is the ongoing COVID-19 pandemic that has forced this Court and other judges in the district to adjourn and delay trials. And third, for the reasons described in its opposition to the defendant's May 28, 2020 request for pretrial release, the defendant is a danger to the community and a flight risk. See ECF Dkt. No. 34. In sum, all of the relevant factors show that the defendant's continued detention is consistent with due process.

The defendant's cited cases are distinguishable on numerous grounds. In United States v. Gonzales Claudio, 806 F.2d 334 (2d Cir. 1986), the Second Circuit found that a 26 month period of pretrial detention before a jury would determine guilt or innocence (based on 14 months of pretrial detention, trial scheduled months away, and an estimated trial length of eight months) was excessive. Id. at 340-41. Importantly, the court found that the government bore "responsibility for a portion of the delay significant enough to add considerable weight to the defendants' claim" of excessive pretrial detention, as the government had taken many months to translate and produce discovery. Id. at 342-43. Those findings, which are far afield from the circumstances of the defendant's case, were enough to overcome the court's conclusion that the Gonzales Claudio defendants were dangerous and flight risks. Id. at 343.

In United States v. Ojeda Rios, 846 F.2d 167 (2d Cir. 1988), the Second Circuit ordered the defendant's release under extraordinary circumstances. In that case, the defendant had been detained for 32 months, trial was at least several months away, and it was set to take many months to try. In addition, the defendant stated that he was willing to abide by strict terms of pretrial release, including a prohibition from leaving Hartford, Connecticut, daily reporting to the government and the use of a radio bracelet. See id. at 169. Under those circumstances, the court found a due process violation and ordered the defendant's release. Ojeda Rios thus sheds little light on the defendant's case, given that his pretrial detention has not and will not last nearly so long.

In sum, based on the particular circumstances of the defendant's case, his continued pretrial detention does not violate due process.

### C. COVID-19 Restrictions Do Not Implicate the Sixth Amendment

In his latest application, the defendant simply alludes to the same Sixth Amendment claims that he has raised in earlier filings, offering no new facts or arguments. While relying on the arguments it raised in its opposition to the defendant's May 28, 2020 bail application, see ECF Dkt. No. 34, the government reiterates that numerous courts in the Second Circuit have rejected the notion that the current restrictions BOP facilities by themselves constitute a Sixth Amendment violation or otherwise support release under 18 U.S.C. § 3142(i). See, e.g., United States v. Ellison, No. 18-CR-834-9 (PAE), 2020 WL 1989301, at *1-2 (S.D.N.Y. Apr. 27, 2020) ("[Defendant]'s general grievance about limited communications with counsel in the weeks since the pandemic struck do not establish a constitutional violation in his or any other case."); United States v. Rico, No. (S1) 18-CR-661 (PGG), 2020 WL 1934989, at *6 (S.D.N.Y. Apr. 21, 2020); United States v. Guzman, No. 20-CR-56 (PAC), 2020 WL 1700253, at *2 (S.D.N.Y. Apr. 8, 2020) ("To accept the defendant's generalizations about impediments to access to counsel and argument that release is necessary, especially in a case where no trial, hearing, or briefing schedule has been set yet, would logically result in the wholesale release of pretrial inmates.").

Now, just as on his earlier bail application, the defendant offers no authority for the proposition that the MDC's current accommodations, or that anything less than his desired amount of contact, rises to a constitutional violation or compels release under Section 3142(i). Furthermore, the parties face the same dynamic that existed earlier—there are no imminent hearing or trial dates scheduled in this case. Accordingly, the defendant has not shown that continued detention violates his Sixth Amendment right to counsel. Compare United States v. Stephens, No. 15-CR-95 (AJN), 2020 WL 1295155, at *3 (S.D.N.Y. Mar. 19, 2020) (hearing scheduled one week away); United States v. Chandler, No. 19-CR-867 (PAC), ECF Dkt. No. 19 (S.D.N.Y. Mar. 31, 2020) (trial scheduled 40 days away)

### D. The Defendant's Other Pre-Trial Requests Are Inappropriate

The defendant requests that the Court schedule a "Zoom hearing" to determine whether certain potential government witnesses might be presenting a "blue wall" by testifying based on confirmation bias and hearsay rather than true firsthand knowledge. See Def. Mot. at 4. In addition to being a gratuitous insult to the integrity of the government's potential witnesses, this request is utterly unsupported by any authority. Indeed, this request seems to be nothing more than a transparent attempt to obtain a preview of the witnesses' trial testimony. The Court should reject it out of hand. The defendant can test any concerns over dishonesty in the normal course through voir dire and cross-examination.

Finally, the defendant's request that the government produce Section 3500 material two weeks before trial would not materially facilitate a smoother and faster trial. As it has explained in multiple filings, the government anticipates calling only a handful of witnesses. Their Section 3500 material will not be voluminous. The typical disclosure timeline of one week before trial will give the defendant ample time to prepare for trial.

IV. <u>Conclusion</u>

        For the reasons set forth above, the government respectfully requests that the Court reject the defendant's motion in its entirety.

                                      Respectfully submitted,

                                      SETH D. DuCHARME
                                      Acting United States Attorney

                    By:    <u>/s/ Andrew Wang</u>
                           Andrew Wang
                           Assistant U.S. Attorney
                           (718) 254-6311

cc: Clerk of Court (RPK) (by ECF)
    Defense Counsel (by Email)