

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

MEB:ADW
F. #2020R00142

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 1, 2021

<u>By ECF</u>

The Honorable Rachel P. Kovner
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    United States v. Keith Levy
       <u>Criminal Docket No. 20-87 (RPK)</u>

Dear Judge Kovner:

    The government respectfully submits this motion <u>in</u> <u>limine</u> in advance of the April 5, 2021 trial in the above-referenced case. The defendant is charged with transmitting an interstate threat to kill or injure, in violation of Title 18, United States Code, Section 875(c), in connection with a phone call during which the defendant threatened to shoot a Senior Parole Officer ("SPO"). As set forth below, the government seeks to admit certain witness testimony regarding a 2010 incident in which a New York state parolee shot a parole officer. Because such evidence is relevant to the government's case-in-chief and not substantially outweighed by unfair prejudice or confusion of the issues, the Court should grant the motion.

I. <u>Factual Background</u>[1]

    On April 15, 2010, a New York State parolee named Robert Morales went to a New York State Division of Parole[2] reporting office at 33 Schermerhorn Street in Brooklyn and

---

   [1] The factual background set forth in the government's <u>in</u> <u>limine</u> motion to introduce certain evidence concerning the defendant's criminal history and uncharged criminal conduct is hereby incorporated by reference. <u>See</u> ECF Dkt No. 37.

   [2] In 2011, the New York State Division of Parole and the New York Department of Corrections merged to form a new agency, the New York State Department of Corrections and Community Supervision. Before that merger, the state agencies existed separately and independently of one another.

shot Parole Officer Samuel Salters once in the chest.[3]  Officer Salters survived the shooting. Morales was eventually charged with and convicted of attempted murder. News of the shooting of Officer Salters spread quickly and became both common knowledge and a cautionary tale among other state parole officers.  Both the SPO and the parole officer who called the defendant on January 27, 2020 ("PO-1") were aware of the shooting of Officer Salters.  Their knowledge of that incident informed their interpretation of the defendant's words on January 27, 2020.

II.    Applicable Law

As the Court is aware, to convict an individual of transmitting an interstate threat in violation of 18 U.S.C. § 875(c), the government must prove beyond a reasonable doubt that that the person communicated a "true threat," which is a jury question.  United States v. Sovie, 122 F.3d 122, 125 (2d Cir. 1997) (citing United States v. Kelner, 534 F.2d 1020, 1027 (2d Cir. 1976)); see United States v. Turner, 720 F.3d 411, 424 (2d Cir. 2013).  A true threat is a statement "where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals," though the speaker "need not actually intend to carry out the threat."  Virginia v. Black, 538 U.S. 343, 359-60 (2003).  Ambiguous statements or implications can be true threats.  See Turner, 720 F.3d at 424 (the "absence of explicitly threatening language does not preclude the finding of a threat") (citation omitted).

The test for whether a statement is a true threat is an objective one—"namely, whether an ordinary, reasonable recipient who is familiar with the context of the [threat] would interpret it as a threat of injury."  Sovie, 122 F.3d at 125 (citation omitted).  "[R]igid adherence to the literal meaning of a communication without regard to its reasonable connotations derived from its ambience would render the statute powerless against the ingenuity of threateners who can instill in the victim's mind as clear an apprehension of impending injury by an implied menace as by a literal threat."  Turner, 720 F.3d at 422 (citation omitted).

"[P]roof of the effect of the alleged threat upon the addressee is highly relevant" to whether a statement is a true threat.  United States v. Malik, 16 F.3d 45, 49 (2d Cir. 1994); see also United States v. Davila, 461 F.3d 298, 305 (2d Cir. 2006).  Where threats are ambiguous, "the recipients' states of minds and their reactions" are particularly significant in "remov[ing] ambiguity by shedding light upon the contexts of the alleged threats."  Malik, 16 F.3d at 50.  In that regard, evidence that a recipient was aware of previous instances of violence against similarly situated people is relevant to the issue of whether a statement is a true threat.  See United States v. Davis, 876 F.2d 71, 73 (9th Cir. 1989) (per curiam), cert. denied, 493 U.S. 866 (1989) (federal judge's testimony "regarding the judge's knowledge of a prior assassination of a federal judge" was properly admitted in trial for violations of 18 U.S.C. §§ 115(a) and 876).

---

[3] The shooting was widely reported at the time.  The New York Times' initial coverage of the event can be found at https://www.nytimes.com/2010/04/17/nyregion/17parole.html.

III.   <u>Discussion</u>

        Testimony by the SPO and PO-1 that they were aware of the 2010 shooting of Officer Salters would provide crucial context for how they interpreted the defendant's ambiguous statements.  Accordingly, such testimony would be highly probative of whether the defendant uttered a true threat.  Moreover, because the proffered testimony would be both brief and based on events clearly not attributable to the defendant, any unfair prejudice or confusion of the issues would be minimal.  For those reasons, as explained in more detail below, the government respectfully requests that the Court allow the government to elicit from SPO and PO-1 at trial testimony regarding their knowledge of the 2010 shooting of Officer Salters and how that knowledge affected their interpretation of the defendant's words.

      A.   <u>Testimony Regarding the Shooting of Officer Salters Is Directly Relevant to Whether the Defendant Uttered a True Threat</u>

        An essential element of the government's case will be proving that the defendant's statement that he wanted to get "the hammer" and shoot the SPO in the face was a true threat.  Evidence of the SPO's and PO-1's states of mind will be highly relevant because such evidence will shed light on the context of the alleged threat.  <u>See</u> <u>Malik</u>, 16 F.3d at 50 (recipients' states of mind and reactions particularly significant to lend context where alleged threat is ambiguous).  In turn, evidence of their states of mind will necessarily depend in part on the officers' general knowledge and experience as parole officers.

        In <u>United States v. Davis</u>, Lutrell Davis mailed a letter to the chief district judge for the District of Hawaii, threatening to kill both the chief district judge and another district judge.  876 F.2d at 72.  Davis was convicted at trial of mailing a threatening letter with intent to extort and threatening to murder a federal judge with intent to impede, intimidate, interfere with, or retaliate against such judge.  <u>Id.</u>  During the trial, the government introduced evidence of the threat to kill the judges, as well as the chief district judge's knowledge of a prior assassination of a federal judge.  On appeal, Davis argued that it was erroneous for the trial court to admit testimony by the chief district judge "regarding the judge's knowledge of a prior assassination of a federal judge, as well as evidence regarding the steps taken to protect" the chief district judge.  <u>Id.</u> at 73.  The Ninth Circuit summarily rejected this argument, holding that evidence of "the recipient's state of mind, as well as his actions taken in response to the letter, [were] highly relevant" in establishing whether the letter contained a true threat.  <u>Id.</u> (citing <u>United States v. Reynolds</u>, 532 F.2d 1150, 1155-56 (7th Cir. 1976); <u>United States v. Barcley</u>, 452 F.2d 930, 934 n.6 (8th Cir. 1971)).

        Here, consistent with <u>Davis</u>, testimony by the SPO and PO-1 regarding their knowledge of past instances of violence by parolees against parole officers would be highly probative of their states of mind, and thus would be key to proving whether the defendant's words were a true threat.  The government anticipates that SPO and PO-1 would testify that they were aware of the basic facts regarding the 2010 shooting of Officer Salters, that the incident was regarded by parole officers as a cautionary tale to be vigilant against possible violence from parolees, and that the incident informed their respective interpretations of the defendant's words.  Especially because the defendant is likely to argue that his words were ambiguous, testimony regarding similar examples of violence against parole officers—<u>i.e.</u>, the context of the alleged

threat—would demonstrate that the SPO's and PO-1's interpretations were reasonable.  See Malik, 16 F.3d at 50.  Put another way, evidence that violence similar to the type contained in an alleged threat had previously occurred "tends to show that it was reasonable to take the threat seriously."  United States v. Carter, Case No. 94-CR-628 (ACW), 1995 WL 480991, at *2 (N.D. Ill. Aug. 11, 1995) (citing Davis, 876 F.2d at 73).

> **B.** **The Probative Value of Testimony Regarding the Officer Salters Shooting Would Not Be Substantially Outweighed by Unfair Prejudice or Confusion of Issues**

Any danger of unfair prejudice or confusion created by testimony regarding the 2010 shooting of Officer Salters would be minimal and would not substantially outweigh its probative value.  See Fed. R. Evid. 403; United States v. Zackson, 12 F.3d 1178, 1182 (2d Cir. 1993).  The government's inquiry into the officers' knowledge of the shooting would be brief and would not extend beyond the fact of the shooting and how it informed the SPO's and PO-1's interpretation of the defendant's words.  And because the testimony would clearly relate to a third person's conduct as opposed to the defendant's, there would be little risk of prejudice or confusion created as to the defendant.  In any event, such an inquiry would not be unduly prejudicial because the evidence would not be "more inflammatory than the charged crime." United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999).  Therefore, the government respectfully submits that the proffered testimony is admissible pursuant to Federal Rule of Evidence 403.[4]

**IV.   Conclusion**

For the reasons set forth above, the government respectfully requests that it be allowed to introduce evidence at trial regarding the SPO's and PO-1's knowledge of the 2010 shooting of Officer Salters and how that knowledge affected their mental states.

Respectfully submitted,

SETH D. DuCHARME
Acting United States Attorney

By:     /s/ Andrew Wang
Andrew D. Wang
Assistant U.S. Attorney
(718) 254-6311

cc:     Clerk of Court (RPK) (ECF)
Defense counsel (Email)

---

[4] To the extent the Court concludes it is necessary, any potential for undue prejudice can be further mitigated by a limiting instruction cautioning to the jury that they are to consider testimony regarding the 2010 Officer Salters shooting only for the purpose of evaluating the reasonableness of the SPO's and PO-1's belief that the defendant's statements constituted a threat.