# WL| Wright Law, LLP

### ATTORNEY AT LAW

### 305 BROADWAY, SUITE 1001,
### NEW YORK, NY 10007
### OFFICE (212) 822-1419 • FACSIMILE (212) 822-1463
www.wrightlaw.nyc

March 15, 2021

Honorable Rachel P. Kovner
United States Court House
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re: United States v. Keith Levy**
**DK# 20-CR-00087 (RPK)**

Dear Judge Kovner:

The undersigned and Gordon Mehler write in response to the government's motion in limine dated March 1, 2021. *See* ECF Dkt. No. 58 ("Govt. Mot."). In its motion in limine the government seeks a ruling from the Court to introduce testimony from two trial witnesses concerning a 2010 shooting of a New York State parole officer by a parolee. Govt. Mot. At 1. The government's application is transparently another audacious attempt to admit tangential and irrelevant evidence; and rain down upon Mr. Levy irreparably unfair prejudice such that a conviction would all but be assured.

The defendant is charged in a single count indictment allegedly transmitting an interstate threat on January 27, 2020, to injure a New York State parole officer in violation of 18 U.S.C. § 875(c). For the reasons set forth below, the Court should deny the government's motion as it is nothing but a heavily rigged and totally unwarranted attempt to place its thumb on the scales of justice.

### A. Untimely Filing of Government's Motion in Limine

On September 21, 2020, the parties held a teleconference to set a motion and trial schedule, and in response to the Court's query about a so ordered motion schedule, the government stated "…our proposal is for motions in limine to be filed. And I think at this point we're really just contemplating one particular, a 404(b) motion to be filed on October 26th…" *See U.S. v. Levy*, 20-CR-87 (RPK) (Sept. 21, 2020 Transcript at 4).[1] As a result of that representation the Court

---

[1] September 21, 2020 transcript is attached as Exhibit A.

directed that "[a]ny motions in limine will be filed on or before October 26, 2020." *See* ECF Docket Text, September 21, 2020.

Now over four months after that October 26 deadline, and with our trial date fast approaching under terribly trying circumstances the government files on March 1, 2021 the instant motion in limine; without any explanation as to the late filing and bereft of any good cause to justify this exorbitant delay. It could not possibly be argued that this latest motion in limine proffers newly unearthed evidence or sensitive information that necessitated late disclosure. Rather, the government's outrageous application involves a profoundly prejudicial violent incident that occurred over one-decade ago involving participants and facts wholly divorced from the matter at hand.

The defense is aware of the Court's individual practice rules which states: "Any motions addressing evidentiary or other issues which should be resolved *in limine* shall be filed 14 days before the commencement of trial, *unless otherwise ordered by the Court*." *See*, Individual Practice Rules of Judge Rachel P. Kovner at pg. 7. We contend that the Court's order on September 21, 2020, which set an October 26, 2020 deadline to file motions in limine, controls and is consistent with the Court's individual practice rules.

We respectfully request that the Court summarily deny the government's motion in limine which was filed over four months after the October 26 deadline as untimely.

## B. 18 U.S.C. § 875(c) Legal Standard

To convict Mr. Levy for transmitting an interstate threat under 18 U.S.C. § 875(c) the the government must prove beyond a reasonable doubt the following two elements: first, that Mr. Levy's interstate communication was objectively a "true threat", *United States v. Turner*, 720 F.3d 411, 420 (2d Cir. 2013); and second, that he subjectively possessed the requisite "mental state" with respect to sending the alleged threat. *Elonis v. United States*, 135 S.Ct. 2001, 2012 (2015).

As to whether a § 875(c) "true threat" was uttered the Second Circuit demands the government prove "that the circumstances were such that an ordinary, reasonable recipient familiar with the context of the communication would interpret it as a true threat of injury." *United States v. Francis,* 164 F.3d 120 (2d Cir. 1999); *see also Turner* 720 F.3d at 420. It is in regard to this first element of § 875(c) that the government claims the relevance of its proposed testimony concerning the 2010 shooting of a parole officer.

In its motion, the government seeks to admit highly inflammatory testimony regarding a bizarre and isolated incident from 2010 (not repeated since then) where a parolee walked into the New York State Division of Parole offices in downtown Brooklyn and cruelly shot his parole officer in the chest. The government contends that one or more government witnesses were aware of this incident, such testimony is "highly probative" of their state of minds informing "their respective interpretation of the defendant's words" particularly where the government anticipates the defense will argue the alleged threat was "ambiguous." Govt. Mot. at 3.

To be frank, the government is concerned that Mr. Levy may be victorious at trial and it is seeking to guarantee a conviction by tainting the jury with all manner of lurid and violent details of a decade-old parole officer shooting entirely unrelated to Mr. Levy. In essence, the government's motion in limine is a concession of their vulnerability, and they are petitioning the Court to provide unparalleled relief. As discussed below, the Court should deny that relief.

### C.  Troubling Expansion of § 875(c) Legal Analysis

The government is asking the Court to set up a radically unbalanced legal paradigm under the § 875(c) "true threat" analysis; whereby the target of a purported threat could testify about acts of violence committed against other members of its class/group – those "similarly situated". Govt. Mot. at 2.  More exactly, the government wants the Court to adopt the following unprecedented rule "*evidence that a recipient was aware of pervious instances of violence against similarly situated people is relevant to the issue of whether a statement is a true threat*." Id.  That is a position no court has ever held.

To adopt such a rule would allow a jury to consider whether the recipient of the threat was aware that other members its class had previously been the victims of violence in cases wholly unrelated to their own case.  As by way of example, if a person were threatened by a former domestic partner (*United States v. Sovie*, 122 F.3d 122, 125 (2d Cir. 1997)) testimony would be allowed regarding their knowledge of past instances of domestic violence and their probative value on their state of mind.  Or consider the case of a college professor who was threatened by a former student (*United States v. Segui*, 19-CR-0188 (KAM)); a court would allow that professor to testify about his knowledge of campus shootings and his awareness of assaults on other professors and the effect that had on how he interpreted the student's threat.  Of course, the Courts in *Segui* and *Sovie* reached no such conclusion; indeed, no court anywhere has ruled in accord with the position the government posits.[2]

The one and only case the government cites in support of its unprecedented position is a Ninth Circuit case from 1989. *United States v. Davis*, 876 F.2d 71(9th Cir. 1989).  However, the *Davis* decision does not stand for the broad principle argued by the government; namely that recipients of a threat can testify to "past instances of violence" committed against "similarly situated" members of its class, in this case parolees against parole officers. Quite the contrary, the *Davis* decision includes no such broad language of those "similarly situated" – it is a short and narrow holding anchored to the facts of the case, which allowed a Federal judge to testify about his awareness that another Federal judge was assassinated in an unrelated case.  In fact, the *Davis* decision appears to be an outlier in allowing that type of testimony, as the case has not been cited once in the 32 years since its decision for the broad proposition the government wants the Court to adopt.

The government is making a bold and preposterous request – the Court should expand § 875(c) true threat legal doctrine to include a class/group or "similarly situated" analysis – that the

---

[2] Interestingly, no such application was made by the government in the *United States v. Segui* trial, likely because the government felt it had the quantum of evidence to convict (which ultimately it did not), whereas in the instant case the government is grasping at straws as it faces the distinct possibility of an acquittal.

recipient of a threat would be permitted to testify about prior acts of violence committed against fellow members of their class or group (parole officers, teachers, domestic partners, etc.). A position not adopted in the Second Circuit (nor any other Federal Circuit). Even the *Davis* court reached no such broad legal conclusion. Allowing the parole witnesses to testify regarding their knowledge of prior acts of violence committed against fellow parole officers would create a looser standard for a threat conviction when the whole thrust of the Supreme Court in this area is to tighten the standard. *See, Elonis* 135 S.Ct. at 2012 (adding subjective requirement on top of objective requirement).

### D. Testimony Not Relevant to Prove a "True Threat"

The government must demonstrate that the evidence it seeks to admit is relevant and such "[r]elevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." *Huddleston v. United States*, 485 U.S. 681, 689 (1988). The government submits that the proposed testimony regarding the 2010 of a parole officer is necessary to prove a § 875(c) true threat and to rebut a defense claim that killing statements were "ambiguous." Govt. Mot. at 3.

However, in seeking the proposed testimony the government appears to misinterpret its burden in proving a § 875(c) true threat; as the Supreme Court held "the speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats 'protect[s] individuals from the fear of violence' and 'from the disruption that fear engenders' in addition to protecting people from the possibility that threatened violence will occur." *Virginia v. Black* 538 U.S. 343, 359-60 (2003). The Second Circuit is an accord, adopting the rule that a true threat need <u>not</u> contain an explicit expression of the defendant's intention to cause injury. *See United States v. Malik*, 16 F.3d 45, 49 (2d Cir. 1994) ("An absence of explicitly threatening language doings not preclude a true threat under § 876"); *Turner* at 425 (holding that threats "need be neither explicit nor conveyed with the grammatical precision of an Oxford don").

In other words, the government seeks to proffer evidence of an actual completed threat – the actual completed shooting of a parole officer in 2010 – when no such legal hurdle is required. The government concedes as much in its motion "[a]mbiguous statements or implications can be true threats." Govt. Mot. at 2. Accordingly, testimony regarding the 2010 shooting is not relevant if, as the government readily concedes, it is not necessary for them to prove Mr. Levy intended to carry out the threat. *See Black* 538 at 359. Oddly, the government appears to place a higher legal burden upon itself than the case law mandates and thereby exposes the true purpose of the proposed testimony; to inflame the jury with the horrid story of a parolee wantonly shooting down his parole officer.

In the instant case there is sufficient other evidence to arguably establish an § 875(c) true threat, including by not limited to: Mr. Levy's prior interactions with the SPO, his interactions with other parole officers, his removal of his ankle bracelet, his travel to Georgia, disputes Mr. Levy had with parole, his displeasure with the SPO's geographic restrictions placed upon him and whole host of other relevant testimony. In other words, there are plenty of facts that could assist the jury in deciding whether Mr. Levy's communication was in fact a "true threat."

### E. Rule 403: "more irrelevant emotion than relevant facts"

Although, evidence may be relevant, it can of course still be excluded under Rule 403 of the Federal Rules of Evidence if its probative value is substantially outweighed by unfair prejudice, confusing the issues or misleading the jury. *See* Fed. R. Evid 403. Evidence is prejudicial when it tends to have an "adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980).

The proposed testimony concerning a parolee (much like Mr. Levy) who in 2010 walked into his parole officer's office and viciously shoots down his parole officer (much like the Senior Parole Officer ("SPO")) is so clearly on its face unfairly prejudicial. As set forth above, Mr. Levy's jury will <u>not</u> be tasked with deciding whether his statement was to actually shoot the SPO but whether it was reasonable for the SPO to interpret his statement as a "true threat." Testimony regarding a shooting from eleven years ago involving entirely different people does nothing to assist the jury in deciding whether it was an § 875(c) true threat; it will simply and logically lead the jury to believe that the SPO would face a similar fate.

The government brushes off any concern of unfair prejudice with a sleight of hand, claiming the testimony regarding the 2010 parole office shooting would be "brief and not extend beyond the fact of the shooting" and that it did not involve Mr. Levy. Govt. Mot. at 4. That statement ignores the reality of a criminal jury trial which demands defense counsel to zealously cross-*examine* witnesses which inevitably leads to further divulging of the lurid details of the 2010 parole officer shooting. Finally, of course there is the unfair prejudice that will inevitably befall Mr. Levy as the jury is left with the all but certain impression that the 2010 shooting was a foretelling of the SPO's fate at the hands of Mr. Levy.

Tucked in at the end of the government's motion in limine is a highly illuminating Rule 403 case and one that ultimately proves fatal to the government's contention. *United States v. Carter*, Case No. 94-CR-628 (ACW), 1995 WL 480991 (N.D. Ill. Aug. 11, 1995).[3] A close reading of the *Carter* case provides an excellent and illustrative road map of the perils regarding the admissibility of evidence such as the 2010 parole officer shooting; so much so that it is odd the government would cite this case in support of its application.

The *Carter* court rejected much of the government's proposed evidence as violating Rule 403, and in particular it excluded testimony that the recipient of the threat was aware the *Carter* defendant had previously shot and killed a man although that fact made it entirely reasonable to take the *Carter* defendant's threat seriously. *Id.* at *7. The *Carter* court reasoned (and we quote at length because it is so compelling and frankly dispositive of the government's motion):

> "Nevertheless, it is the seriousness of the crime in comparison to the offense charged which persuades the court that it is too prejudicial to be admitted. In

---

[3] The government cites the *Carter* case to support its position that evidence of prior acts of violence against those "similarly situated" is admissible. Govt. Mot. at 4. The *Carter* court reached no such conclusion, it simply found "that evidence that the victim knew that the threatened conduct occurred before tends to show it was reasonable to take the threat seriously." *Carter* at *2.

making a determination whether to exclude a prior act under Rule 403, the court should take into account what Professors Wright and Graham term "the comparative enormity of the wrongs." Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure, Evidence § 5250, at 548. That is, where the other crime "is of a much more heinous nature than the charged crime" exclusion is necessary to avoid inflaming the jury. *Id.* 548-49. This rule applies with great force here. The one-count indictment charges Carter with having committed a relatively modest crime -- making a threat over the telephone. To allow evidence that this defendant repeatedly shot a man in the back for sharing a cigarette with his prostitute is likely to spark outrage in the jury. Because this reaction is likely to overshadow the more simple (and proper) inference that the communication was a "true threat," this act will [sic] excluded."
*Id.* at *7

To be sure the logic of the *Carter* court applies with equal and compelling force to the case against Mr. Levy. He is charged with speaking on one phone call not even initiated by him, and the government is seeking to admit evidence of a far more grievous and disturbing crime - the 2010 parole officer shooting. Any value the 2010 parole officer shooting might provide regarding the witnesses' state of mind is far overshadowed by the unfair prejudice. We respectfully submit that the Court should follow the reasoning of *Carter* and similarly bar the government's proposed testimony of that 2010 shooting; to hold otherwise would "invite into the jury room more irrelevant emotion than relevant fact." *Id.* at *3.

It is simple: the government must reconcile itself to the fact that this case is about one threat made during the course of one phone call. This motion like so many others the government has made are all window dressing in a vain attempt to make this case something more sinister. At bottom, the government fears an acquittal and is seeking to bloody Mr. Levy with any and all irrelevant and unfairly prejudicial evidence. The government's hope is to make Mr. Levy appear that much more menacing such that a frightened jury will convict him.

## F.  Supplemental Proposed Voir Dire Questions

We also write briefly to respond to the government's March 12, 2021 objections to the supplemental proposed defense voir dire questions. While the defense and prosecution did confer and did submit joint jury instructions, even in that submission the parties noted areas of disagreement.

Similarly, we did not understand joint submissions to bar the submission of additional proposed questions by the defense. Indeed, no doubt both sides ask the court for additional instructions or questions as conditions or evidence warrants. The prosecution is correct: some of these questions were previously seen by the Court in its last trial and one cannot fault us for hoping that events in the Court's last trial may cause the Court to evaluate our proposed questions in a new light.

### G. Conclusion

For the reasons set forth above, the Court should deny the government's motion to admit testimony of the parole witnesses regarding the 2010 shooting of a parole officer as well as the government's objection to the defense voir dire.

Sincerely,

*/s/ Christopher D. Wright*
305 Broadway
Suite 1001
New York, New York 10007

*/s/ Gordon Mehler*
Mehler Law PLLC
747 Third Avenue, 32nd Floor
New York, NY 10017

*Attorneys for Defendant Keith Levy*