

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

MEB:ADW
F. #2020R00142

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 22, 2021

<u>By ECF</u>

The Honorable Rachel P. Kovner
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: <u>United States v. Keith Levy</u>
     <u>Criminal Docket No. 20-87 (RPK)</u>

Dear Judge Kovner:

   The government respectfully submits this reply in support of its motion <u>in</u> <u>limine</u> to admit testimony regarding certain witnesses' knowledge of the 2010 shooting of Parole Officer Samuel Salters. The proffered testimony would result in minimal prejudice to the defendant because no reasonable juror could ascribe the 2010 shooting to the defendant or his actions. Instead, such testimony is relevant to the separate issue of the reasonableness of the witnesses' interpretation of the defendant's words. Accordingly, the Court should grant the motion and permit the government to elicit the proffered testimony.

 I. <u>Timeliness of the Government's Motion</u>

   As a threshold matter, the government respectfully requests that the Court consider the instant motion to narrow the issues before trial and ensure judicial economy. The government first learned of the PO Salters shooting only recently and promptly filed the instant motion afterward. Specifically, on February 22, 2021, the government interviewed the SPO and PO-1 in preparation for trial. During those interviews, each witness separately informed the government of the PO Salters shooting and said that knowledge of that shooting affected the respective witness's interpretation of the defendant's words on January 27, 2020. Neither witness had previously brought these facts to the government's attention.

   On March 1, 2021, promptly after learning of the PO Salters shooting, the government filed the instant motion. The government filed the instant motion to give defense counsel and the Court ample notice and to allow the parties to brief the issue rather than risk unnecessary delay at trial through oral objections and on-the-spot argument. Because trial is

scheduled to begin on April 12, 2021, the government's filing well exceeded the Court's default deadline for filing in limine motions of 14 days before the commencement of trial.

While the Court previously adopted a proposed schedule for filing of in limine motions by October 26, 2020, the parties originally agreed on that schedule when trial in this case was set for December 14, 2020.  As described above, the government did not learn about the PO Salters shooting until February 22, 2021, after the December 14 trial date had been adjourned.

Ultimately, the defendant has suffered no prejudice from the timing of the government's filing, and the interests of judicial economy weigh strongly in favor of considering the government's motion.  Therefore, the Court should rule on the merits of the government's motion before trial.

II.   The Proffered Testimony Is Relevant to Witnesses' Interpretations of the Threat

The proffered testimony regarding the 2010 shooting of PO Salters is relevant to the true threat issue because it speaks to the "states of minds and [the] reactions" of the SPO and PO-1, as well as the reasonableness of their reactions.  United States v. Malik, 16 F.3d 45, 50 (2d Cir. 1994); see id. at 50 ("proof of the effect of the alleged threat upon the addressee is highly relevant" to whether a statement is a true threat); United States v. Sovie, 122 F.3d 122, 125 (2d Cir. 1997) (whether a statement is a true threat depends, in part, on "whether an ordinary, reasonable recipient who is familiar with the context of the [threat] would interpret it as a threat of injury") (emphasis added).  For the jury to assess the reasonableness of the SPO's and PO-1's reactions, it must hear evidence regarding not only the defendant's known history and words, but also the witnesses' perspectives as parole officers, which necessarily affected why they took seriously the defendant's threat.

The perspectives of the SPO and PO-1 were shaped by their personal experiences supervising parolees and the institutional knowledge of the Department of Corrections and Community Supervision.  That institutional knowledge includes the high-profile shooting of PO Salters, which naturally instilled in parole officers an understanding that violence by parolees against parole officers was a real possibility.  Put another way, the fact that a fellow parole officer had been shot by a parolee contributed to the SPO's and PO-1's belief that the defendant's words were a true threat.  The government should be permitted to elicit those facts to demonstrate the reasonableness of the witnesses' reactions.[1]

The defendant's response is nothing more than sleight-of-hand.  See ECF No. 68 at 4 ("testimony regarding the 2010 shooting is not relevant if, as the government readily

---

[1] A counterfactual example further illustrates the point.  For instance, if it were the case that there were no known instances of parolees shooting parole officers within the past few decades, that would be a ripe area for cross-examination by the defendant.  After all, in that scenario, a concession by the SPO or PO-1 might suggest that they overreacted to the defendant's words.  On the other hand, evidence that the officers were aware of an actual shooting tends to show that their interpretations were reasonable.

concedes, it is not necessary for them to prove Mr. Levy intended to carry out the threat"). As the government clearly explained in its motion, the proffered testimony is relevant to the reasonableness of the parole officers' reactions and interpretations. But instead of directly addressing this point, the defendant suggests that the proffered testimony could only be relevant to whether the defendant intended to carry out the threat. Having asserted that false premise, the defendant concludes that the proffered testimony is not relevant because the government need not prove the defendant intended to carry out the threat. This argument misses the point entirely.

The defendant further illustrates the weakness of his argument in his discussion of United States v. Davis, 876 F.2d 71 (9th Cir. 1989). In that case, the Ninth Circuit upheld the trial court's decision to permit testimony regarding "a prior assassination of a federal judge" as probative of the witness's state of mind. Id. at 73. While the Ninth Circuit did not examine this issue in great detail, the logic of its holding is clear. Namely, evidence that a threat victim was aware of prior instances of similar violence is relevant where it affected the victim's interpretation of the threat. This logic squarely applies here. The defendant's only response is to claim Davis is an outlier with a "narrow holding anchored to the facts of the case." ECF No. 68 at 3. Even assuming that is true, the Court is equally able to issue a narrow ruling that would allow the government to inquire into the PO Salters shooting in a fashion that is anchored to the facts of this case.

III.   The Proffered Testimony Results in Minimal Prejudice to the Defendant

The strong probative value of the proffered evidence is not substantially outweighed by any unfair prejudice. Indeed, any unfair prejudice to the defendant would be minimal because the proffered testimony does not reflect the defendant's conduct or character. As such, the proffered testimony does not fall into any of the traditional categories of evidence that might be unfairly prejudicial, such as propensity evidence or prior acts evidence.

The defendant nevertheless claims that testimony regarding the PO Salters shooting would create unfair prejudice because it would somehow lead the jury to believe "that the SPO would face a similar fate" and give it the "certain impression that the 2010 shooting was a foretelling of the SPO's fate at the hands of Mr. Levy." ECF No. 68 at 5. This argument is entirely conclusory and unbound by any logic. It might carry some weight if the defendant was the perpetrator of the 2010 shooting of PO Salters, notwithstanding any propensity considerations. But, as explained earlier, the proffered testimony is relevant only to the SPO's and PO-1's general states of mind with respect to the dangers they face on the job as parole officers.

For similar reasons, the defendant's reliance on United States v. Carter, Case No. 94-CR-628 (ACW), 1995 WL 480991 (N.D. Ill. Aug. 11, 1995) is misplaced. See ECF No. 68 at 5-6. There, the trial court understandably excluded evidence of a prior shooting committed by Robert Wayne Carter in his trial for transmitting an interstate threat. See Carter, 1995 WL 480991 at *7. The court explained that allowing evidence "that this defendant repeatedly shot a man in the back for sharing a cigarette with his prostitute is likely to spark outrage in the jury," which would likely "overshadow the more simple (and proper) inference that the communication was a 'true threat.'" Id. (emphasis added). Hence, Carter stands for the uncontroversial proposition that a trial defendant's prior bad acts may be excluded under Rule 403 where such

3

acts could unfairly spark outrage in the jury against that trial defendant. That concern does not exist here. In any event, should the Court conclude that the proffered testimony may lead to any unfair prejudice or confusion of the issues, the government submits that the proper remedy is limiting instructions.

IV. <u>Conclusion</u>

      For the reasons set forth in the government's motion and above, the government respectfully requests that it be allowed to introduce evidence at trial regarding the SPO's and PO-1's knowledge of the 2010 shooting of PO Salters and how that knowledge informed their interpretations of the defendant's words.

      Respectfully submitted,

      MARK J. LESKO
      Acting United States Attorney

By:   /s/ Andrew Wang
      Andrew D. Wang
      Assistant U.S. Attorney
      (718) 254-6311

cc:    Clerk of Court (RPK) (ECF)
       Defense counsel (Email)